UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Eric FRADY, et al.,<br><br>　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>NEW PEAKS LLC, et al.<br><br>　　　　　　　　　　Defendants. | Case No.:  23-cv-0158-AGS-JLB<br><br>**ORDER GRANTING IN PART MOTION TO DISMISS (ECF 23)** |

In this corporate-fraud lawsuit, the defense moves to dismiss for lack of personal jurisdiction and sundry pleading defects.

### BACKGROUND[1]

Defendants Richard Tan and Michael Burnett run a "global educational empire spread across 35 countries" that organizes events featuring noted speakers, such as former U.S. presidents. (ECF 1, at 4.) According to the complaint, they also run a web of shell companies that defrauded plaintiffs.

The scam purportedly went like this. Tan and Burnett own the Australian parent company Success Resources Global Media (SRGM), which holds "all the true assets and intellectual property" and pulls the strings of its subordinates. (ECF 1, at 5.) In particular, SRGM owns RTMB Venture Inc. (acronym for "Richard Tan Michael Burnett"), which in turn controls New Peaks LLC, the California-based business that plaintiffs dealt with. (*Id.* at 4–5, 7.) Tan and Burnett have "ownership interests and direct control" over all three entities. (*Id.* at 5.) Under the scheme, defendants funneled money away from the subsidiary entities, which were left to operate with millions of dollars in "loans" from the parent company that were later "written off." (*Id.* at 6–7, 11.) While RTMB and New Peaks were

---

[1] For motion-to-dismiss purposes, this Court accepts "the factual allegations in the complaint as true" and construes them "in the light most favorable to the plaintiff." *GP Vincent II v. Estate of Beard*, 68 F.4th 508, 514 (9th Cir. 2023).

the "public facing companies that would be exposed to direct liability," they were "purposely undercapitalized to make them judgment proof." (*Id*. (emphasis removed).)

Enter plaintiffs Eric Frady and Carey Rudick. Their business sells "stock market education programs," which they wanted to market at New Peaks' public events. (ECF 1, at 8.) The parties agreed that New Peaks would "process the payments of any audience members" who bought these programs, with New Peaks remitting "a set percentage of each sale to plaintiffs." (*Id.*) New Peaks later breached that contract and "refused to pay" plaintiffs "what they were owed." (*Id.*)

Thus began plaintiffs' ill-fated chase after New Peaks' elusive assets. In 2020, the parties entered into a settlement agreement, including a confession of judgment. (ECF 1, at 9.) New Peaks promptly "defaulted." (*Id.*) Later that year, plaintiffs filed the confession of judgment in San Diego County Superior Court. (*Id.*; *see also* ECF 1-3, at 2.) In 2021, the court ordered New Peaks to sit for a judgment-debtor examination, but no representative appeared. (ECF 1, at 10.)

Finally, plaintiffs sued in federal court, alleging various flavors of fraud, misrepresentation, and conspiracy. New Peaks was served, but has not yet answered or otherwise participated in the case. (*See* ECF 11.) The Court entered default against RTMB. (*See* ECF 7.) The remaining defendants—Tan, Burnett, and parent company SRGM—move to dismiss.

## DISCUSSION

**A.    The Motion's Timeliness**

At the outset, plaintiffs argue that defendants' motion should be denied because it "was filed more than 21 days after the Defendants were served with the Complaint." (*See* ECF 26, at 8–9.) Defendants respond that any tardiness was caused by plaintiffs' counsel's unwillingness or inability to meet and confer on issues. (ECF 30, at 3.)

The motion to dismiss was untimely. Burnett's deadline to respond to plaintiffs' complaint was March 14, 2023, while Tan's deadline was March 29, 2023. (ECF 26-1, at 5.) Defendants "did not file their motion for an extension of time until May 17, 2023,

2

nearly two months later," even though defense counsel was retained March 10, 2023. (*Id.* at 13; ECF 12-2, at 2).

But such lateness may be forgiven if it was based on "excusable neglect." *See Kettle Range Conservation Grp. v. United States Forest Serv.*, 8 F. App'x 729, 731 (9th Cir. 2001). The Court's discretion is guided by four factors: "(1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1261 (9th Cir. 2010).

The lack of punctuality here was excusable. Counsel for both sides were apparently confused about the status of service. Well after the deadline to respond to the complaint had passed, plaintiffs' counsel asked if defense counsel was "authorized to accept service" for Tan and Burnett and then, two days later, emailed proofs of service for each defendant. (*See* ECF 12-2, at 9–11.) Defense counsel's repeated follow-ups and meet-and-confer requests concerning an extension indicate diligence and good-faith effort rather than an attempt "to obtain any advantage." *See Goens v. Adams & Assocs., Inc.*, No. 2:16-cv-00960-TLN-KJN, 2018 WL 263896, at *4 (E.D. Cal. Jan. 2, 2018); (ECF 12-2, at 8–9). For good measure, there appears to be no "danger of prejudice" to plaintiffs, and the "length of the delay" did not unduly impact the proceedings. *See Ahanchian*, 624 F.3d at 1261. Finally, there is no "evidence of ulterior motives," and therefore "defendants need not . . . offer[] a terribly good countervailing reason to make their neglect excusable." *See Pincay v. Andrews*, 389 F.3d 853, 861 (9th Cir. 2004) (Berzon, J., concurring). The Court may thus proceed to the merits.

**B.    Personal Jurisdiction**

Defendants argue that this Court lacks personal jurisdiction over them. (*See* ECF 23, at 10.) "Personal jurisdiction comes in two varieties: general and specific."[2] *Briskin v.*

---

[2] Technically, "[t]wo authorities govern a federal court's exercise of personal jurisdiction over a defendant: the Fourteenth Amendment's Due Process Clause"—which

3

*Shopify, Inc.*, 87 F.4th 404, 411 (9th Cir. 2023). "General jurisdiction extends to any and all claims brought against a defendant," but typically only applies to an individual where they reside and to a corporate defendant "in its state of incorporation and the state where it maintains its principal place of business." *Id.* None of the relevant defendants here reside in the United States, let alone California. (*See* ECF 1, at 2.)

By contrast, "[s]pecific jurisdiction covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Briskin*, 87 F.4th at 411 (cleaned up). "For specific jurisdiction to exist over a non-resident defendant," plaintiffs must show that defendant (1) "purposefully direct[ed] his activities toward the forum" and (2) "the claim must be one which arises out of or relates to the defendant's forum-related activities." *Id.* (cleaned up). Even if those requirements are met, a defendant may still defeat personal jurisdiction by establishing that (3) the "exercise of jurisdiction" does not "comport with fair play and substantial justice." *Id.*

A foreign defendant purposefully directs itself at the forum if its forum contacts are attributable to: (a) "intentional acts" that are (b) "expressly aimed at the forum" and that (c) cause "harm, the brunt of which is suffered—and which the defendant knows is likely to be suffered—in the forum." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).

### 1. *Individual Defendants*

Plaintiffs have successfully shown that the Court may exercise specific personal jurisdiction over Burnett and Tan.

---

is where the specific and general jurisdictional issues arise—"and the long arm statute of the state in which the district court sits." *Briskin v. Shopify, Inc.*, 87 F.4th 404, 411 (9th Cir. 2023). But in this case, those "requirements are coterminous . . . because California's long arm statute allows courts to exercise jurisdiction on any ground not inconsistent with due process." *See id.*

4

### a. *Purposeful Direction*

Although the strength of their ties differ, Burnett and Tan have both purposefully directed their activities at this forum. First take Burnett. As New Peaks' CEO, he "operated" that company and another related business out of the same California address. (ECF 1, at 7–8.) In January 2020, plaintiff Frady flew to California and met Burnett in person at his request in order "to discuss SRGM, including past money owed to [p]laintiffs." (ECF 26-2, at 2.) On behalf of New Peaks, Burnett "was directly involved in . . . both the execution of the settlement agreement and Confession of Judgment" between New Peaks and plaintiffs. (ECF 1, at 9.) The settlement agreement was entered into and governed by California law (*see* ECF 26-4, at 24), and the confession of judgment was filed in San Diego County Superior Court (ECF 1-3, at 2).

The fact that Burnett was acting in a representative capacity—as an officer of New Peaks—doesn't change the analysis. An individual who "acts as an agent of a third party" is still responsible for each of those "individual's actions" towards the forum. *Global Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1109 (9th Cir. 2020). As New Peaks' CEO, Burnett was directly involved in a California settlement agreement on behalf of a California company, demonstrating that he "engage[d] in some form of affirmative conduct allowing or promoting the transaction of business within the forum state." *See Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990). Likewise, while Burnett may have been outside California during the phone calls and the mediation, the "absence of physical contacts" in the forum state does not "defeat personal jurisdiction," especially in light of these "intentional act[s]" "expressly aimed" at California. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).

Finally, Burnett negotiated and executed the California confession of judgment on behalf of New Peaks, which secured the post-mediation settlement agreement. (*See* ECF 26-4, at 36, 42–43.) The agreement itself sets its venue for enforcement as: "San Diego[,] California." (*Id*. at 24–25.) That document purports to "inure to the benefit" of and "bind[]" New Peaks' "officers," such as Burnett. (*Id*.) And even if the attempt to

bind himself to the agreement was unsuccessful—an issue the Court need not decide—it certainly shows he "manifestly has availed himself of the privilege of conducting business" in California. *See Burger King*, 471 U.S. at 476. Purposeful direction requires nothing more.

Turning to defendant Tan, the evidence of purposeful direction is not as strong, but still sufficient. Though Tan denies being an officer of New Peaks, he claims to be a "shareholder and investor." (ECF 1, at 7–8; *see also* ECF 23-2, at 2.) Incidentally, this claim seems to contradict the complaint, which says that RTMB owns 100% of New Peaks' stock. (*See* ECF 1, at 5.) Regardless, Tan is an officer of New Peaks' owner, RTMB, and an officer in SRGM, which owns RTMB. (ECF 26-1, at 4.) And, like Burnett, Tan "operated" another business from the same California address as New Peaks' office. (ECF 1, at 7–8.) Also, while Frady was in California, he and Tan had "numerous" phone calls "to discuss SRGM's vision for New Peaks." (ECF 26, at 11.)

Tan also "participated directly" in the "mediation" negotiated from San Diego. (ECF 26-1, at 2.) As stated earlier, the settlement agreement and confession of judgment—from which this entire case arises—relied on California law. (*See* ECF 1-3, at 2–3; ECF 26-1, at 2.) When a defendant "conducted extensive settlement negotiations in California" and the resulting "agreement was executed, in part, in California," that defendant has "conducted sufficiently substantial activities in California to satisfy" purposeful direction. *Grant v. Kamehameha Schs./Bernice Pauahi Bishop Est.*, No. CV 08-00672 FCD KJM, 2008 WL 11387074, at *6 (E.D. Cal. Nov. 17, 2008). As with Burnett, Tan's lack of "physical presence" in California and role as a New Peaks investor doesn't foreclose jurisdiction. *See Global Commodities Trading Grp.*, 972 F.3d at 1109.

Again, the settlement agreement purports to "bind[]" and "inure to" Tan's benefit, but it's less clear how involved he was in the final agreement's specific language. (*See* ECF 26-4, at 2–7 (setting forth emails involved in settlement-agreement term negotiations that included Burnett, but not Tan).) Nonetheless, plaintiffs sufficiently allege that Tan

purposefully directed himself toward the privileges of California's laws, particularly when he helped negotiate an agreement under, and dependent on, those laws.

### b. *Arises Out of or Relates to the Forum-Related Activities*

For the second prong of specific personal jurisdiction, plaintiffs must show that they "would not have been injured 'but for' defendants' conduct directed toward California." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998) (cleaned up), *holding modified by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006). Tan and Burnett negotiated the settlement agreement and confession of judgment, while allegedly making misrepresentations and pretending they were going to pay. (ECF 1, at 9–10.) According to plaintiffs, but for defendants' raiding New Peaks' assets, rendering the company "hopelessly unprofitable and effectively judgment proof," they would have been paid. (ECF 1, at 7 and 10.) Thus, plaintiffs have sufficiently pleaded but-for causation. Their claims "arise[] out of or relate[] to the" conduct in the forum state. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

### c. *Fair Play and Substantial Justice*

"The plaintiff bears the burden on the first two prongs," but once those are established, "the defendant must come forward with a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008). Defendants have not "come forward" with such evidence. So, the request to dismiss for lack of personal jurisdiction over Tan and Burnett is denied.

### 2. *Defendant SRGM*

By contrast, plaintiffs' personal-jurisdiction case for SRGM comes up short. Plaintiffs provide no evidence that the actions Tan and Burnett took were on behalf of SRGM, rather than New Peaks. (*See generally* ECF 26, at 15.)

Instead, plaintiffs allege that New Peaks, RTMB, and SRGM "essentially operate as one unified entity by sharing resources, leadership and unity of ownership." (ECF 1, at 7.) In other words, they argue that New Peaks and SRGM are "alter egos"—that is, a single

entity such that this Court may exercise "general jurisdiction over SRGM." (ECF 26, at 15.) "[T]he alter ego test may be used to extend personal jurisdiction to a foreign parent" "when, in actuality, the foreign entity is not separate from its domestic affiliate." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015). "To satisfy the alter ego test, a plaintiff must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice." *Id.* at 1073 (cleaned up). Plaintiffs fail on both counts.

"The 'unity of interest and ownership' prong" "envisions pervasive control over the subsidiary, such as when a parent corporation dictates every facet of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation." *Id.* Plaintiffs allege that Tan and Burnett are officers of both and that New Peaks is entirely owned by SRGM, by way of its ownership of RTMB. (*See* ECF 1, at 4–5.) But "[t]otal ownership and shared management personnel are alone insufficient to establish the requisite level of control." *Ranza*, 793 F.3d at 1073. Plaintiffs have offered very little to suggest that SRGM ran New Peaks' daily activities. They rely instead on the facts that RTMB and New Peaks have the same physical address, that Burnett and Tan used the same email address to run both companies, and that SRGM utilized New Peaks' Facebook account to market its events. (*See* ECF 1, at 7–8.) But none of that proves, or even strongly suggests, day-to-day control.

Frady's declaration is perhaps the best evidence that the entities are one. Frady declares that he "flew out to California and met with Michael Burnett in person at Mr. Burnett's request," and they discussed "Success Resources, including past money owed to me and past and future business." (ECF 26-2, at 2.) But even that is too thin a reed on which to rest an alter-ego finding. There is no explanation as to what that discussion included or whether it indicates that Burnett was interchangeably using his different companies as a single entity. "[D]irectors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately"; "that

8

fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts." *Sonora Diamond Corp. v. Superior Ct.*, 99 Cal. Rptr. 2d 824, 843–44 (Ct. App. 2000) (cleaned up).

Likewise, there is insufficient evidence for the second prong—that respecting the separate corporate identities would result in fraud or injustice. For instance, plaintiffs complain that SRGM "purposefully" gave "millions of dollars to its subordinate entities," including New Peaks, in the form of "habitual loans." (ECF 1, at 6.) But they offer nothing—other than conclusory remarks—to imply that "the two entities fail to keep adequate records" or that SRGM "freely transfers" or commingles New Peaks' "assets." *See Ranza*, 793 F.3d at 1074. Their evidence in fact undermines the alter-ego claim. A creditor/debtor relationship suggests that the two are treated as *separate* entities, as a "parent corporation may be directly involved in financing" its subsidiaries "without exposing itself to a charge that each subsidiary is merely its alter ego." *Ranza*, 793 F.3d at 1074.

Perhaps more alter-ego evidence exists than is now on offer. Or maybe plaintiffs know some undisclosed facts that justify specific jurisdiction. But the Court currently does not have enough to conclude that the alter-ego theory grants it personal jurisdiction over SRGM. (*See* ECF 26, at 15.) In anticipation of this outcome, plaintiffs alternatively request jurisdictional discovery. (*See id.* 21.) Although the evidence in its present form is not enough to justify personal jurisdiction, it justifies limited discovery into the matter. *See Laub v. United States Dep't of the Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (holding that courts should permit jurisdictional discovery if there is a "'reasonable probability' that the outcome" might "be different" based on the factual showing in the original motion). But first, plaintiffs must overcome the motion to dismiss.

### C. Motion to Dismiss

To survive a motion to dismiss, a complaint must contain enough facts to "state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678. Each claim raises slightly different issues.

### 1. *Fraud Claims*

The defense insists that the fraud-related causes of action fail to meet the heightened pleading standards for such claims. When "alleging fraud or mistake, a party must state with *particularity* the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis added). In this context, "particularity" means "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (cleaned up). Put simply, plaintiffs must detail the "who, what, when, where, and how" of the alleged fraud. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). When a fraud suit includes multiple defendants, "a plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme." *Swartz*, 476 F.3d at 765 (cleaned up).

Plaintiffs correctly argue that these stricter pleading requisites "may be relaxed as to matters within the opposing party's knowledge." (ECF 26, at 12.) "In such cases," plaintiffs point out, "the particularity requirement may be satisfied if the allegations are accompanied by a statement of the facts on which the belief is founded." (*Id.*) Even under this relaxed standard, however, plaintiffs "should include the misrepresentations themselves with particularity and, where possible, the roles of the individual defendants in the misrepresentations." *Moore v. Kayport Package Express*, 885 F.2d 531, 540 (9th Cir. 1989).

    a. *Fraudulent Transfer and Common-Law Fraud (Claims 2 and 3)*

"[T]he elements for a fraudulent transfer claim" are "the same" under both "common law" and California statutory law. *Hyosung (Am.), Inc. v. Hantle USA, Inc.*, No. C 10-02160 SBA, 2011 WL 835781, at *7 (N.D. Cal. Mar. 4, 2011). For both, plaintiff must show that an asset was transferred: "(1) [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor" and "(2) [w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation." *See* Cal. Civ. Code § 3439.04(a). An "[a]sset" means "property of a debtor," and "[p]roperty" is anything that may be the "subject of ownership," whether tangible or intangible. Cal. Civ. Code § 3439.01(a), (j).

Plaintiffs fail to clear the particularity bar, despite setting forth many damning allegations. Plaintiffs say that Tan and Burnett "personally loan[ed] millions of dollars to SRGM," which in turn loaned money to New Peaks. (ECF 1, at 6.) Defendants allegedly siphoned assets from New Peaks, rendering it a "judgment proof" "hollow shell," "encumbered with loans that . . . far exceed the total amount of [its] cash flows." (*Id.* at 7.) Despite all these money transfers, defendants purportedly "had no intention of paying the outstanding balance owed" to plaintiffs. (*Id.* at 9.) But plaintiffs do not set forth many of the essential items they must plead: each defendant's role "in the alleged fraudulent scheme" (who), the assets transferred (what), the timing of the fraudulent activities (when), and what methods were used to transfer the assets (how). *See Swartz*, 476 F.3d at 765; (*see* ECF 1, at 11, 13, 16, 17).

As to the "who," plaintiffs fail to specify each defendant's role in the fraud, alleging generally that all "*defendants* knew, participated in, [and] benefitted from" the fraudulent transfer, all "*defendants* were aware of the issues surrounding the fraudulent transaction," and all "*defendants* transferred the assets . . . ." (ECF 1, at 11, 13 (emphasis added).) A fraudulent-transfer claim cannot "merely lump multiple defendants together," as plaintiffs do here. *See Swartz*, 476 F.3d at 764.

In terms of the "what," plaintiffs charge that all New Peaks' assets "were transferred in anticipation of the litigation and settlement," but they do not itemize those assets. (ECF 1, at 11.) The only nod towards such an accounting concerns New Peaks' Facebook page, which plaintiffs claim is a "very valuable asset." (*See id.* at 10–11.) The Facebook activities allegedly "contain connections, customer lists, and relationships" that defendants can profit from. (ECF 26, at 19.) Although "assets" include intangible property, Facebook followers do not qualify. "Alleged relationships with 'potential customers'" are not company assets, "because they are nothing more than 'speculative economic relationship[s].'" *See Rheumatology Diagnostics Lab'y, Inc. v. Aetna, Inc.*, No. 12-CV-05847-WHO, 2013 WL 5694452, at *20 (N.D. Cal. Oct. 18, 2013). And Facebook followers are not "subject to enforcement of a money judgment," as potential customers

are not property and cannot be illegally transferred or stolen by defendants. *See* Cal. Civ. Code § 3439.01 (Legis. Comm. Comment, Assembly 1986); *see also Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 406 (9th Cir. 1991) ("[I]t might be said that defendants hoped to 'steal' [plaintiff's] customers. But it cannot be said that these customers were [plaintiff's] property.").

For the "when" and "how," plaintiffs offer only a vague statement that defendants "approved the transfer of assets from [New Peaks] to other companies." (ECF 1, at 12.) The complaint is devoid of any discussion of when defendants allegedly transferred the subsidiary's assets, where the assets were transferred, or how the transfers occurred. So, plaintiffs allege none of the required markers with particularity.

Particularity concerns aside, plaintiffs fail to establish the first element of their claim. That is, they do not plausibly suggest that defendants had an "*intent* to hinder, delay, or defraud any creditor." *See* Cal. Civ. Code § 3439.04(a) (emphasis added); *see also Iqbal*, 556 U.S. at 680, 686–87 (holding that "Rule 9" of the Federal Rule of Civil Procedure "excuses a party from pleading discriminatory intent under an elevated [particularity] pleading standard," but still requires "plausibility"). Stripped of conclusory remarks, the complaint alleges that New Peaks owed money both to plaintiffs (who it never paid) as well as to its parent corporation SRGM (who it also never paid, so those loans were "subsequently written off"). (*See* ECF 1, at 6.) Nothing in that narrative plausibly hints at an intent to defraud. Rather, it tells the story of an unprofitable company in debt to its business partners. It certainly doesn't suggest that defendants had any fraudulent intent while drafting the settlement agreement or transferring unidentified assets. At most, plaintiffs describe "suspicious circumstances" that fall short of an intent to defraud. *See Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (finding "allegations of insider trading" deficient based on mere "suspicious circumstances" that the defendant "was an investment banker for [a company] and that [company] eventually sank into financial trouble").

Thus, plaintiffs' fraudulent-transfer causes of action (claims 2 and 3) must be dismissed for failing to state a claim.

      b. *Intentional Misrepresentation (Claim 5)*

The elements of intentional misrepresentation are: "(1) misrepresentation (for example, false representation, concealment, or nondisclosure); (2) knowledge of falsity, or scienter; (3) intent to defraud (that is, to induce reliance); (4) justifiable reliance; and (5) resulting damage." *Davis v. Abbott Labs*, 562 F. Supp. 3d 585, 589 (C.D. Cal. 2021) (cleaned up). At a minimum, plaintiffs must "include the misrepresentations themselves with particularity and, where possible, the roles of the individual defendants in the misrepresentations." *Moore*, 885 F.2d at 540.

For many of the same reasons discussed above, plaintiffs fail to establish this claim's elements and to plead with sufficient particularity, even under the relaxed pleading standard. Plaintiffs assert that defendants made representations in the settlement process that "they knew . . . to be false." (*Id.* at 17.) But they don't specify what those representations were. As before, they lump defendants together without differentiating individual conduct. And again they fail to identify who made the misrepresentations as well as when, how, and where they were made. (*See* ECF 1, at 11, 13, 16–17.)

Plaintiffs allege the concealment of material facts included "facts surrounding [defendants'] plans to breach their obligations under the settlement agreement and their plans to transfer all assets to foreign companies affiliated with defendants." (ECF 1, at 16.) But they offer only conclusory statements that defendants had "knowledge of the true facts and circumstances surrounding their scheme to hide [New Peaks'] assets." (*Id.* at 17.) "Even under a more relaxed standard, a plaintiff must still set forth the factual basis for his belief, and mere speculation and conclusory allegations are insufficient to state a claim." *Facebook, Inc. v. MaxBounty, Inc.*, No. 5:10-CV-04712-JF HRL, 2011 WL 4346514, at *3 (N.D. Cal. Sept. 14, 2011) (cleaned up). Without more, they have not plausibly alleged an intent to defraud.

In short, then, the intentional-misrepresentation cause of action has many of the same pleading infirmities as the fraud-related claims and thus shares the same fate.

### 2. *Derivative Claims*

Because plaintiffs' charge of "[c]ivil conspiracy is merely derivative" of the fraud claim, it must also be dismissed. *See Medimpact Healthcare Sys., Inc. v. IQVIA Inc.*, No. 19CV1865-GPC(DEB), 2022 WL 17824007, at *14 (S.D. Cal. Dec. 20, 2022). The same applies to counts 1 and 6, which request "declaratory and injunctive relief," as they are merely "remedies" for the fraud claims. *See Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 975 (N.D. Cal. 2010).

### C.     **Amendment and Jurisdictional Discovery**

If a complaint fails to state a plausible claim, as here, the "district court should grant leave to amend" the complaint, "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). The Court has discretion to grant such leave at any time "when justice so requires." Fed. R. Civ. P. 15(a)(2). Absent "undue prejudice," "undue delay, bad faith or dilatory motive," "repeated failure to cure deficiencies by amendments previously allowed," or "futility of amendment," there is "a presumption . . . in favor of granting leave to amend." *Eminence Cap., LLC v. Apseon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiffs may be able to cure the deficiencies discussed above and have not yet had an opportunity to amend. Justice therefore requires leave to amend their complaint.

If plaintiffs continue to sue SRGM and are successful in stating a claim for fraud—either after successful motion practice or because defendants do not contest the pleading further—the suit will proceed to case management. Within 14 days of the filing of an answer or of the denial of a future motion to dismiss, the parties must file a request for the Magistrate Judge to provide a case management order to permit jurisdictional discovery on SRGM. This Court will defer all questions on the scope, form, and length of that discovery to the Magistrate Judge's discretion.

# CONCLUSION

Defendants' motion to dismiss is **GRANTED IN PART**. The Court concludes that it has personal jurisdiction over defendants Burnett and Tan, but not over SRGM. All claims against SRGM are therefore **DISMISSED**. In addition, the motion to dismiss the complaint for failure to state a claim is **GRANTED** with leave to amend. By April 7, 2024, plaintiffs must file any amended complaint.

Dated: March 8, 2024

_____
Andrew G. Schopler
United States District Judge